UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                                            Chapter 13
Tina Cosentino,                                                          Case No. 12-35267-svk
        Debtor.

Tina Cosentino,
        Plaintiff,
v.                                                                                 Adversary No. 13-2304

Bank of America, N.A.,
        Defendant.

DECISION AND ORDER DENYING
MOTION TO ENFORCE SETTLEMENT

      In 2006, Tina Cosentino (the "Debtor") borrowed money from Countrywide Home Loans, Inc. ("Countrywide") to purchase her parents' home. (ECF No. 1.) The Debtor contends that a Countrywide loan officer made false representations to her concerning the escrow provisions and the maximum amount of the mortgage payments on the loan. (*Id*. at ¶¶ 6, 10 – 14.) In 2008, Countrywide offered the Debtor a loan modification, which the Debtor accepted, signed and returned. (*Id*. at ¶ 22; Exhibit 1.) In 2009, the Debtor received notice that Bank of America ("BOA") now owned and serviced her mortgage loan and learned that BOA had no record of her loan modification agreement with Countrywide; however BOA offered the Debtor a HAMP loan modification.[1] (*Id*. at ¶¶ 28, 29.) Although the Debtor continued to believe that she already had a valid modification agreement with Countrywide, she agreed to a Trial Period Plan with BOA in December 2009. (*Id*. at ¶ 31.) After she made payments for several months, BOA advised the Debtor that she could not remain in the Trial Period Plan, but that she might be

---

[1] HAMP is the Home Affordable Modification Program, a federal program designed to help eligible home owners with loan modifications on their home mortgage debt.

eligible for an "in house" loan modification. (*Id*. at 32 – 33.) Eventually, even though the Debtor alleges she complied with all of BOA's requests to obtain the modification, BOA notified the Debtor that it was starting foreclosure proceedings. (*Id.* at 35.) In 2011, BOA filed a foreclosure action against the Debtor's residence; after the Debtor filed an answer with affirmative defenses, the parties stipulated to dismissal of the foreclosure. (*Id.* at 37.) The Debtor then resumed communications with BOA to obtain a satisfactory loan modification or to convince BOA to acknowledge the Debtor's loan modification with Countrywide. (*Id*. at 38.) These discussions failed, and BOA filed another mortgage foreclosure action on April 9, 2012. (*Id*.)

On October 22, 2012, the Debtor filed a Chapter 13 case to stay the second foreclosure. She objected to BOA's proof of claim and instituted this adversary proceeding against BOA.[2] The adversary proceeding docket shows numerous adjournments of the pretrial conference as the parties attempted to negotiate a loan modification. On April 16, 2015, the parties notified the Court that the matter was settled, but by the end of April, the Debtor hired new counsel who filed a motion to strike BOA's answer as untimely. (ECF Nos. 17, 22.) At a hearing on the motion to strike the answer, BOA's attorney requested that the Court order the parties to mediation. (ECF No. 27.) According to the Court's summary of the hearing, "[Attorney Perhach] explained that the parties had reached an agreement in principal under which the Debtor had been approved for a permanent loan modification at an agreed-on dollar amount, and at the last moment the Debtor contended some payments were missing, although she did not identify them." (*Id*.) The Debtor's counsel was not opposed to mediation, and on May 18, 2015, the Court entered an

---

[2] The Debtor's claims in the adversary proceeding include fraud, negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel and misapplication of payments.

2

order naming the Honorable Margaret Dee McGarity as mediator. (ECF No. 31.) The order provides:

> If the parties reach an agreement regarding the disposition of this proceeding, the parties will either prepare a written settlement agreement at the mediation session, or, if time does not permit the drafting of a full settlement agreement, the parties will indicate their assent to the agreement on the record via the electronic sound recording system, and will then prepare and submit a written settlement agreement within 7 days of the conclusion of the mediation session.

(*Id.* at ¶ 8.)

The mediation was held on June 19, 2015, and Judge McGarity advised that the mediation was successful. However, on September 4, 2015, BOA filed a motion to enforce the settlement. The motion states that the Debtor refused to sign the written settlement agreement, including a 2014 HAMP loan modification that BOA contended was integral to the settlement. (ECF No. 34.) At the hearing on BOA's motion, the Debtor and the attorney who represented her at the mediation[3] appeared and disputed that she had agreed to execute the 2014 HAMP modification. The Debtor stated that she had previously rejected that modification and was expecting a new modification, and the attorney said that he was also under the impression that the settlement contemplated a "new" HAMP modification. Attorney Goodman represented that both he and the Debtor apparently were under a "misapprehension" of what BOA intended. He also corroborated the Debtor's understanding that the payments on the loan modification were supposed to remain fixed, except if there was an increase in taxes or insurance.

BOA argued that Judge McGarity's summary of the agreement at the end of the mediation was unambiguous and that the Debtor agreed to the settlement. The Court took under

---

[3] The Debtor had terminated the attorney's services and represented herself at the hearing. The Court was impressed that under these strained circumstances, Attorney Goodman confirmed that there was no meeting of the minds on the terms of the settlement agreement.

3

advisement the issue of whether an oral agreement reached in mediation may be enforced in light of one party's failure to sign the agreement due to a dispute over the terms.

## ANALYSIS

Courts clearly have the power to enforce agreements entered into by the parties to settle litigation. *Carr v. Runyan*, 89 F.3d 327 (7th Cir. 1996). Whether settlement agreements are enforceable is determined by reference to state law. *See Elustra v. Mineo,* 595 F.3d 699 (7th Cir. 2010); *see also Dillard v. Starcon Intern, Inc.,* 483 F.3d 502, 506 (7th Cir. 2007) ("[T]here has been 'uncertainty' in circuit case law 'over whether state or federal law would govern a suit to enforce a settlement of a federal suit' but that the 'uncertainty' has been dispelled; it is state law.") Accordingly, Wisconsin law governs this dispute over a real estate mortgage on Wisconsin property.

Wisconsin courts apply principles of contract law to "illuminate" the inquiry into the enforceability of settlement agreements. *Kocinski v. Home Ins. Co.*, 154 Wis. 2d 56, 67-68, 452 N.W.2d 360 (Wis. 1990). A contract is void and unenforceable under Wisconsin law where there is an absence of a meeting of the minds as to an essential term. *Am. Nat'l Prop. & Cas. Co. v. Nersesian*, 2004 WI App 215 ¶16, 277 Wis. 2d 430, 689 N.W.2d 992.

In this case, there was not a meeting of the minds as to the essential terms of the settlement. BOA points to Judge McGarity's reference to the "HAMP program that the parties have pending" and Attorney Perhach's mention of the modification of "August 14th of 2014 . . . that would have been sent to Mr. Hanson's office" to show that the Debtor must have understood that she was committing to the 2014 HAMP modification. But both the Debtor and Attorney Goodman represented that they did not understand and agree that the loan modification was the 2014 HAMP modification that the Debtor previously rejected. They assumed it would be a new

4

modification agreement. They also stated their understanding that the payment was fixed and would not increase absent an increase in the real estate taxes or insurance. (ECF No. 39 at 2:58, 14:14, 39:04-41:00.) The Debtor also questioned the principal amount of the obligation as apparently included in the 2014 HAMP modification. Although a number is stated in the transcript offered by BOA, the Debtor points out that the transcript includes only the "closing arguments" of the settlement. (ECF No. 39 at 21:11-22:17.) The Debtor believes that statements made prior to these "closing arguments" contradict the seeming finality of the amount due and other terms of the loan modification. (*Id.*) It appears from the transcript that both parties contemplated further work on the settlement when reducing the terms to writing. Combined with the Debtor's understanding that a new modification was contemplated, the Debtor's dispute over the amount due is not unreasonable.

These facts demonstrate that there was not a meeting of the minds at the conclusion of the mediation, rather than an agreement reached over which the Debtor now has "settler's remorse." Given the lack of evidence of a meeting of the minds over the material terms, the parties' oral settlement made at the conclusion of the mediation is not enforceable.

IT IS THEREFORE ORDERED: the Motion filed by Bank of America, N.A. to Enforce the Settlement is denied.

By the Court:

*Susan Kelley*
Susan V. Kelley
Chief U.S. Bankruptcy Judge